UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LESLIE LEE EDWARDS,

    Petitioner,                        Civil No. 2:07-CV-14798
                                          HONORABLE LAWRENCE O. ZATKOFF
v.                                     UNITED STATES DISTRICT JUDGE

KENNETH ROMANOWSKI,

    Respondent.
_____/

**OPINION AND ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS**

Leslie Lee Edwards ("petitioner"), presently confined at the Gus Harrison Correctional Facility in Adrian, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction and sentence on (1) two counts of first-degree criminal sexual conduct, CSC I, MCL 750.520b(I)(e), (2) assault with intent to murder, MCL 750.83, (3) burning of a dwelling house, MCL 750.72, and (4) armed robbery, MCL 750.529. For the reasons stated below, the petition for writ of habeas corpus is **DENIED.**

**I. Background**

Following a jury trial, petitioner was convicted of the above charges and sentenced to 23 to 50 years imprisonment for each CSC I conviction, 23 to 50 years imprisonment for the assault with intent to murder conviction, 10 to 20 years imprisonment for the burning of a dwelling house conviction, and 23 to 50 years imprisonment for the armed robber conviction. Complainant Dekella Croff testified that in November, 2003, she met petitioner, whom she knew as Kevin Lee. He visited her at her apartment and school and they spoke by telephone. She described him as a friend. According to Croff, the petitioner asked her to marry him. She was not interested because he said

he had children. On the morning of February 3, 2004, he came to her apartment, asking to use the telephone. She was still wearing sleeping attire when petitioner knocked at her door. When she asked him to leave, he replied that he would go after receiving a kiss. She declined. He then went to the kitchen and returned with a butter knife. He placed the butter knife to her neck, stated that he was going to rape and kill her, and took her to the bedroom. After removing her clothing, he engaged in intercourse and fellatio while speaking of their marriage. When she tried to leave through the bathroom window, he stopped her and forced her to swallow a pill, which he said was Ecstacy. Petitioner then rummaged through her purse and dresser, removed $50.00, credit cards and identification from her purse, tied her up, put her in a closet and told her that he would return. She untied herself, escaped from the closet and ran to a neighbor, who called the police. When the police arrived, her apartment was engulfed in flames.

Petitioner's conviction was affirmed by the Michigan Court of Appeals, and his leave to appeal to the Michigan Supreme Court was denied. *People v. Edwards,* No. 261406, (Mich.Ct.App. July 25, 2006); *lv. den.* 477 Mich. 973; 725 N.W. 2d 24 (2006). Petitioner now seeks habeas relief on the following ground:

> The trial court abused its discretion by allowing petitioner to proceed in propria persona after finding him competent to stand trial. Petitioner further argues that after observing his behavior during trial, the trial court erred when it did not sua sponte declare a mistrial, order another competency hearing, or order stand-by counsel to take over his representation.

### II. Standard of Review

28 U.S.C. §2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of

the claim–

>    (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>    (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III. Discussion

Petitioner alleges that the trial court (1) abused its discretion by allowing him to proceed in propria persona after finding him competent to stand trial, and (2) further erred when it did not sua sponte declare a mistrial, order another competency hearing, or order stand-by counsel to take over his representation after observing his behavior during the trial.

The record reflects that petitioner unequivocally asserted that he wished to represent himself at his jury trial and that he continued to assert this right throughout the trial.[1] Following his

---

[1] T. 10/24/05 pp. 7-8.
  T 10/25/05 pp. 151-152.

conviction on the above charges, petitioner now believes that he was denied his Sixth Amendment right to the assistance of counsel, alleging that he was not competent to represent himself and that the trial court erred by not insisting that standby counsel take over his representation.

In the federal courts, the right of self-representation has been protected by statute since the infancy of this nation. Section 35 of the Judiciary Act of 1789, 1 Stat. 73, 92, enacted by the First Congress and signed by President Washington one day before the Sixth Amendment was proposed, provided "in all the courts of the United States, the parties may plead and manage their own causes personally or by the assistance of such counsel. ..." This right is now codified in 28 U.S.C. § 1654.

In *Faretta v. California*, 422 U.S. 806 (1975), the Supreme Court explained the background under which the Sixth Amendment was forged. The *Faretta* court, in emphasizing the importance of the right to self-representation, found that from the beginning of this nation, the American Colonies insisted upon a right of self-representation and distrusted any form of mandatory counsel appointed by the state, as had existed in the preceeding years of Star Chamber representation. As expressed in *Faretta*:

> The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense. It is the accused, not counsel, who must be 'informed of the nature and cause of the accusation,' who must be 'confronted with the witnesses against him,' and who must be accorded 'compulsory process for obtaining witnesses in his favor.' Although not stated in the Amendment in so many words, the right to self-representation-to make one's own defense personally-is thus necessarily implied by the structure of the Amendment. The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails.
>
> The counsel provision supplements this design. It speaks of the 'assistance' of counsel, and an assistant, however expert, is still an assistant. The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the Amendment, shall be an aid to a willing defendant-not an organ of the State interposed between an unwilling defendant and his right to defend himself personally. To thrust counsel upon the accused, against his considered

wish, thus violates the logic of the Amendment. In such a case, counsel is not an assistant, but a master; and the right to make a defense is stripped of the personal character upon which the Amendment insists. It is true that when a defendant chooses to have a lawyer manage and present his case, law and tradition may allocate to the counsel the power to make binding decisions of trial strategy in many areas. *Id.* at 819-820.

Most states, including the State of Michigan,[2] also recognize the right of a defendant to represent himself in any criminal case.

It is constitutional error to force a state-appointed public defender on an accused who chooses to represent himself. *Godinez v. Moran*, 509 U.S. 389 (1993). However, before permitting a defendant to proceed pro se, a district court must determine whether the defendant is competent to decide the issue of self-representation. In *Godinez*, the Supreme Court enunciated the standard for competency necessary to waive counsel. The Court held that the level of competency necessary to waive the right to counsel is the same as the level of competency required to stand trial. *Id.* at 391. That standard, set forth in *Dusky v. United States*, 362 U.S. 402 (1960), is whether the defendant has "a rational as well as factual understanding of the proceedings against him."

The *Godinez* Court found that a determination as to competency was essentially a prerequisite to a finding of knowing and a voluntary waiver. Although the two inquiries are distinct, a separate competency determination is not necessary in every case in which a defendant requests to represent himself:

[T]he competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right*, not the competence to represent himself.

---

[2] *People v. Haddad*, 306 Mich 556 (1943).

*Godinez*, 509 U.S. at 399 (emphasis in original). The court must first determine whether the defendant meets the low *Dusky* standard for competence, and then address whether the waiver of his right to counsel was knowing and voluntary, which is a more difficult standard to meet.

On the first full day of trial, defendant's standby counsel made a separate record concerning defendant's competence to stand trial. Counsel also noted that the issue of competency could be raised at any time, noting that defendant had previously been found incompetent to stand trial.[3] The prosecutor indicated that defendant was found competent following his most recent evaluations, including one conducted by defendant's expert.[4] The prosecutor also noted that the most recent reports, including the one authored by defendant's expert, found extensive malingering by the defendant.[5] The trial court found defendant competent to stand trial under the *Dusky* standard. The trial court relied on the two most recent competency reports, including the one authored by defendant's expert.[6]

The court must next determine whether the defendant is competent to waive his right to counsel, *i.e.*, whether there has been a knowing and voluntary waiver. This determination involves using a "heightened" standard for waiving the right to counsel but not a heightened standard of competence. *Godinez, supra,* at 400-01. In *United States v. McDowell,* 814 F.2d 245 (6th Cir. 1987), the Sixth Circuit went further and set forth a procedure to be followed when a defendant requests to represent himself. *Id.* at 250. The *McDowell* court directed the district court judges to

---

[3] T. 1/25/05 p. 18.

[4] T. *Id.* at 18-20.

[5] *Id.*

[6] *Id.* at 21, 23.

a line of questioning set forth in the 1 *Bench Book for United States District Judges* 1.02-2 (3d ed. 1986) ("*Bench Book*"), which outlines the substantive points for finding that the accused has made a knowing and voluntary waiver of counsel. The model inquiry is contained in the appendix to the *McDowell* opinion.

A review of the record reflects that the trial court's line of questioning adhered closely to the model inquiry set forth in *McDowell*, and the trial court made a clear finding on the record that petitioner had knowingly and intelligently waived his right to counsel. As advised by the *Bench Book*, the trial court appointed standby counsel and stated that the issue of competency may be revisited as needed during petitioner's trial. Any limitations due to physical or educational limitations that do not affect the ability of the accused to choose self-representation can probably be overcome by stand-by counsel or interpreters. *Faretta, supra,* at 834 n. 46. According to *Faretta,*

> [A]lthough a defendant need not himself have the skill and experience of a lawyer in order to competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open."

*Id.* at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)). In this case, the trial court questioned petitioner extensively pertaining to his choice of self-representation.[7] The questioning was consistent with the line of questioning found in the *Bench Book*.

Petitioner now claims that he was not competent to represent himself (a) even though the trial

---

[7] T. 1/24/05 pp. 7-18.

court judge tried to discourage petitioner from self-representation, and (b) informed petitioner of the dangers and disadvantages of self-representation.[8] The trial court also reminded petitioner that he was not a licensed attorney, whereas his stand-by counsel, who would be under a duty to represent him to the best of his abilities, knew the court rules and the rules of evidence. The trial court then questioned petitioner about the nature of the charges against him and explained the consequences of a conviction.[9] After petitioner indicated that he understood his rights, the trial court found that petitioner was competent to represent himself and appointed standby counsel at petitioner's request.[10] Moreover, throughout the course of the trial, the record reflects that defendant did consult with his standby counsel as directed by the court.[11] Finally, when the trial court asked petitioner to reconsider representing himself and to allow standby counsel to take over, petitioner unequivocally stated that he wanted to represent himself.[12]

In regards to petitioner's behavior, the Michigan Court of Appeals found that "this behavior did not create a bona fide doubt about his competence to stand trial." *Edwards,* Slip.Op. *3. Petitioner was clearly aware of what was at stake and "told the jury during both opening statement and closing argument that he was only 21 years of age and could possibly face 24 years in prison as the trial court had warned him prior to trial." *Id.* Therefore, the Court finds that the trial court did not abuse its discretion when it found petitioner competent to waive counsel and represent himself at trial. The Court also concludes that petitioner's claim that the trial court abused its discretion by

---

[8] T. *Id.* at 8-11, 12-15, 17-18.

[9] T. *Id.* at 8-10.

[10] *Id.* at 14-16.

[11] T. 1/25/05 p.25, T. 1/26/05 pp. 29-32, 58-59, 62, 79, 83.

[12] T. 1/25/05 pp. 151-152.

8

allowing him to represent himself at trial is without merit because petitioner was afforded his full constitutional rights under the Sixth Amendment.

### IV. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.** The Court declines to issue a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court will also deny petitioner leave to appeal in forma pauperis, because the appeal would be frivolous. *Dell v. Straub,* 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002).

        S/Lawrence P. Zatkoff
        LAWRENCE P. ZATKOFF
        UNITED STATES DISTRICT JUDGE

Dated: April 2, 2009

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on April 2, 2009.

        S/Marie E. Verlinde
        Case Manager
        (810) 984-3290